T.C. Memo. 1999-244


UNITED STATES TAX COURT


DANIEL F. NIX AND GAYLE H. NIX, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14447-96.                    Filed July 28, 1999.


<u>J. Winston Krause</u>, for petitioners.

<u>Thomas F. Eagan</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined a deficiency of $14,036 in petitioners' Federal income tax for 1991 and an accuracy-related penalty under section 6662(a) of $2,735.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1991, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After settlement, the primary issue for decision is whether petitioners are entitled to deductions for claimed losses relating to a closely held corporation. All references to petitioner are to Daniel F. Nix.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioners resided in Austin, Texas.

In 1986, petitioner was employed in the telecommunications industry as a sales director. While in this position, petitioner identified what he regarded as a new market for single line telephones to complement more expensive business telephone systems that his employer sold.

On April 17, 1987, after investigation and consultation with others, petitioners, David Morales (Morales), and John Amos (Amos) formed Telim Communications Corp. (Telim) as a California corporation to manufacture and sell single line telephones. The board of directors of Telim consisted of Morales, Amos, and Mrs. Nix.

Morales served as chief executive officer of Telim, Amos as vice president of operations, petitioner as vice president, and Mrs. Nix as the secretary and chief financial officer. The Telim stock was to be treated as section 1244 stock. Upon incorporation, petitioners were issued 3,000 shares of stock in Telim, and Morales and Amos were issued 3,000 shares of stock each.

Telim arranged to have single line telephones manufactured in Taiwan and imported to and sold in the United States. The telephones received from Taiwan were defective, and Telim was required to rebuild the telephones before sale to customers. Due to delays and limited sales, Telim realized no profits.

Prior to incorporation of Telim in April of 1987, petitioners spent $39,651 of their funds in startup expenses relating to Telim.

From April to the end of September 1987, petitioners spent an additional $25,046 of their funds to pay expenses of Telim, and on September 29, 1987, an additional 25,000 shares of Telim stock were issued to petitioners.

In October and November of 1987, petitioners spent an additional $30,000 of their funds to pay expenses of Telim, and on November 4, 1987, an additional 16,000 shares of Telim stock were issued to petitioners.

With regard to petitioners' funds that were used to pay expenses of Telim, no promissory notes were issued by Telim to petitioners, and no repayments were made by Telim to petitioners.

As of the end of 1987, as a result of the defective telephones and lack of profits, Telim's business operations were effectively terminated. On January 1, 1988, a Telim corporate resolution authorized Amos to sell Telim's capital equipment in Taiwan and to pay off Telim's debts in Taiwan. Petitioners were authorized to sell Telim's assets located in the United States in order to pay off Telim's remaining debts. The Telim shares of stock owned by Morales and Amos were transferred to petitioners in exchange for releases of Morales and Amos from any debt obligations of Telim.

On January 1, 1988, Morales and Amos resigned as officers of Telim.

On October 11, 1991, petitioners sold for a gain of $26,713 their personal residence in Novato, California, and petitioners moved to Austin, Texas. Petitioner's employer paid $18,419 of petitioners' moving expenses to Texas. Petitioners built a new residence in Austin that was completed in March of 1994, at which time petitioners moved into the new residence.

Telim's 1987 corporate Federal income tax return reflected a total of $16,623 as loans to shareholders.

Telim's 1988 corporate Federal income tax return reflected a total of $15,603 as loans to shareholders.

Telim's 1989 corporate Federal income tax return reflected no income, no tax liability, and no loans to shareholders. This was the final corporate Federal income tax return filed on behalf of Telim.

On their 1989 joint Federal income tax return, petitioners claimed a section 1244 ordinary loss of $28,000 relating to their Telim stock.

On their 1990 joint Federal income tax return, petitioners did not claim any losses relating to their investment in Telim.

On their 1991 joint Federal income tax return, petitioners deferred the $26,713 gain from sale of their California residence, and they claimed a $21,368 moving expense deduction. Petitioners did not claim thereon any losses relating to their investment in Telim.

On audit of petitioners' 1989 joint Federal income tax return, respondent disallowed the $28,000 claimed section 1244 ordinary loss relating to petitioners' Telim stock, and petitioners filed with regard thereto a petition with this Court in Nix v. Commissioner, docket No. 5120-93. Respondent and petitioners reached a settlement in that case in which $22,400 of the claimed $28,000 section 1244 ordinary loss was allowed to petitioners for 1989.

On audit of petitioners' 1990 joint Federal income tax return as originally filed with respondent, respondent made no adjustments to petitioners' return. Thereafter, on April 15, 1994, petitioners filed with respondent an amended 1990 joint Federal income tax return on which petitioners claimed a refund of $5,597, based upon a $51,643 claimed capital loss relating to purported worthless loans made to Telim and an additional $22,000 claimed section 1244 ordinary loss relating to petitioners' shares of stock in Telim. On March 26, 1996, respondent disallowed petitioners' claim for refund for 1990.

On audit of petitioners' 1991 joint Federal income tax return, respondent, among other things, determined that, due to petitioners' failure to purchase their replacement residence within the 2-year rollover period, petitioners were taxable on the $26,713 gain realized on sale of their personal residence in California.

In their petition filed herein with regard to 1991 and at trial, petitioners argue that of the $51,643 capital loss claimed on petitioners' amended 1990 joint Federal income tax return, $3,000 was claimed as a loss on the amended 1990 return and the remaining $48,643 should be available as a capital loss carryover to 1991 and should offset the $26,713 capital gain recognized on sale of petitioners' residence.

Petitioners also argue that the $22,000 section 1244 ordinary loss claimed on their amended 1990 joint Federal income tax return should be recharacterized and now also be treated as a nonsection 1244 capital loss and be available as a capital loss carryover to 1991.

OPINION

In general, taxpayers bear the burden of proving that they are entitled to claimed losses, and taxpayers are expected to maintain adequate records to substantiate claimed losses. See sec. 6001; Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Respondent argues, among other things, that due to lack of substantiation, petitioners are not entitled to any of petitioners' claimed bad debt and stock losses relating to Telim. Respondent also argues that none of the funds petitioners paid to or on behalf of Telim should be treated as loans (but rather as part of petitioners' investment in the capital stock of Telim) and that whatever stock related losses petitioners incurred in connection with their investment in Telim should be treated as section 1244 ordinary losses for 1989 and fully absorbed in 1989 and prior years.

We agree with respondent's argument. Petitioners have not substantiated or established the amount of losses they incurred

with regard to Telim, that any such losses were incurred in 1990, that funds they paid to or on behalf of Telim (and on which the alleged bad debt losses are based) constituted loans, and that whatever losses petitioners incurred with regard to Telim constituted anything other than section 1244 losses.

No credible evidence supports the existence of the alleged loans from petitioners to Telim. No promissory notes exist. No repayments were made to petitioners. To the contrary, with regard to funds petitioners paid to or on behalf of Telim petitioners were issued additional stock in Telim. Telim's corporate Federal income tax returns for 1987 and 1988 showed only small loans to shareholders, and Telim's corporate Federal income tax return for 1989 did not reflect any loans to shareholders.

By the end of 1987, Telim had ceased operations. In 1988, Telim sold off its assets. In 1989, Telim filed its final tax return. On petitioners' 1990 and 1991 joint Federal income tax returns as originally filed with respondent, petitioners did not claim any losses relating to petitioners' investment in Telim.

No credible evidence supports petitioners' claim that their losses with regard to Telim should be treated as 1990 losses.

In 1988, petitioners were authorized to sell off assets of Telim. The evidence does not establish what funds were realized on such sales and what portion thereof was retained by

petitioners, if any. Telim's books and records were not produced. The amount of petitioners' losses with regard to their investment in Telim is not established.

Petitioners' claim--that all funds they invested in Telim should be treated as capital losses for 1990 relating to non-section 1244 stock--is inconsistent with petitioners' settlement of their case in this Court involving 1989, pursuant to which petitioners' Telim stock was given section 1244 stock treatment. Petitioners' attempt to recast funds they invested in Telim as representing either loans or as nonsection 1244 stock appears to be nothing more than a belated attempt to manufacture capital losses to offset capital gain income petitioners admit they failed to report on their 1991 joint Federal income tax return.

Under section 6662(a), a 20-percent accuracy-related penalty applies to underpayments of tax attributable to negligence.

Petitioners argue that unforeseen delays in construction of their new residence caused them to miss the 2-year tax free roll-over period relating to gain on sale of their California residence and that they relied on their tax return preparer in deducting moving expenses paid by their employer.

The credible evidence does not support petitioners' argument. We sustain respondent's determination of the accuracy-related penalty.

To reflect the foregoing,

A decision will be entered

under Rule 155.
